**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| TERRY MCDANIEL, <br><br> Plaintiff, <br><br> v. <br><br> DAIICHI SANKYO, INC., et al., <br><br> Defendants. | Civil No. 17-3495(RBK/JS) |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the "Motion to Withdraw" ("motion") [Doc. No. 6][1] filed by plaintiff's counsel, Thomas Cartmell, Esquire, Jeffrey Kuntz, Esquire, and David DeGreeff, Esquire, on behalf of their law firm Wagstaff & Cartmell, LLP (hereinafter collectively referred to as "counsel"). No opposition to the motion has been filed. The Court recently held oral argument. Counsel seeks to withdraw because the case is too expensive now that his client has chosen to litigate rather than settle. For the reasons to be discussed, counsel's Motion to Withdraw is DENIED.

---

[1] This Order also addresses plaintiff's "Motion to Withdraw a Filed Document" [Doc. No. 4]. That motion sought to retract a previous Motion to Withdraw as Counsel filed on the docket [Doc. No. 3]. Because the previous Motion to Withdraw as Counsel [Doc. No. 3] has already been terminated, Doc. No. 4 is DENIED as moot.

**BACKGROUND**

Because the Court writes primarily for the benefit of the parties and the parties are familiar with the background of this matter, only the most salient facts will be set forth. This case is part of a multi-district products liability litigation ("MDL") wherein individual plaintiffs, including Terry McDaniel, brought suit against Daiichi Sankyo Inc., Daiichi Sankyo U.S. Holdings, Inc., and Forest Laboratories, Inc. alleging adverse drug reactions to the olmesarten family of pharmaceutical drugs developed and marketed by defendants. Approximately 2,000 related lawsuits are pending before the Court. On or about August 1, 2017, defendants and a committee of plaintiffs' counsel reached an agreement in principal to settle. The agreement was supplemented in 2018. The parties' settlement set up a detailed voluntary settlement program whereby each participant was required to opt in in order to participate. Plaintiff is one of only five claimants who have not elected to participate in the voluntary settlement program.

On June 6, 2018, the Court issued an Order requiring any plaintiff who had not enrolled in the settlement program by the enrollment deadline to appear with counsel before the Court on July 24, 2018. Plaintiff did not enroll in the settlement by the deadline. Accordingly, he appeared with counsel on July 24, 2018. At that hearing, plaintiff informed the Court he did not want to

enroll in the settlement program but requested to proceed with his claims individually. The Court offered plaintiff additional time to think about his decision, requiring plaintiff to inform the Court of his final decision by July 30, 2018. On July 30, plaintiff informed the Court of his intent to enroll in the settlement program. [Doc. No. 9]. However, the following day, counsel informed the Court plaintiff changed his mind and was declining to enroll in the settlement program. [Doc. No. 10].

Counsel for plaintiff filed this Motion to Withdraw stating that it is their belief that entering into the settlement program is in the best interest of the plaintiff. Brief in Support of Motion ("Mot.") [Doc. No. 6-1] at 2. However, counsel acknowledges plaintiff has the right to move forward with his claims against their recommendation. Id. Nevertheless, counsel contends they should be permitted to withdraw primarily because plaintiff's decision to litigate presents a financial burden on counsel. Id.

**DISCUSSION**

Pursuant to L. Civ. R. 102.1, unless other counsel is substituted, withdrawal of counsel requires leave of court. Rusinow v. Kamara, 920 F. Supp. 69, 71 (D.N.J. 1996). In deciding whether to permit an attorney to withdraw, the Court should consider: "(1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4)

3

the degree to which withdrawal will delay the resolution of the case." Id. Ultimately, whether to permit withdrawal is within the Court's discretion. Id. at 71. Further, the Court may refuse to permit an attorney to withdraw despite a showing of good cause. Haines v. Liggett Grp., Inc., 814 F. Supp. 414, 422-23 (D.N.J. 1993) (citing RPC 1.16(c)).

Here, counsel seeks withdrawal pursuant to New Jersey Rules of Professional Conduct ("RPC") 1.16(b)(1), (6) and (7). Counsel argues: (1) counsel's withdrawal will not have a material adverse effect on plaintiff; (2) requiring counsel to continue to represent plaintiff would place an undue financial burden on counsel; and (3) the retainer agreement between counsel and plaintiff permits counsel to discontinue their representation. After evaluating all relevant factors, the Court finds counsel's motion must be denied.

### A. Prejudice to Plaintiff

Pursuant to RPC 1.16(b)(1) a lawyer may not withdraw from representation unless "withdrawal can be accomplished without material adverse effect on the interests of the client." Counsel contends "withdrawal as counsel for plaintiff can be accomplished without material adverse effect on his interests." Mot. at 1. Counsel points out the case has not been set for trial and discovery has not been completed. Id. Counsel avers the case is in the early stages, therefore, plaintiff "has time to find a new lawyer, and a new lawyer could easily take this case over without

4

any delay to get up to speed." Id. Accordingly, counsel argues their withdrawal would not prejudice plaintiff.

The Court disagrees with counsel and is convinced plaintiff will be substantially and materially prejudiced if counsel is permitted to withdraw. It is doubtful plaintiff will be able to retain new counsel at this stage in the litigation. Although trial has not been scheduled and discovery is not complete, this MDL has been ongoing since 2015. Because a detailed settlement program has been agreed to, and plaintiff is one of only five plaintiffs who elected to litigate rather than settle, it is almost certain plaintiff will not be able to find counsel willing to represent him. This is a complex drug liability case that will require substantial resources to prosecute. Plaintiff does not have the resources to fund the litigation. Even counsel acknowledges the value of plaintiff's claim is not enough to pay for the necessary litigation expenses to pursue the case. Given this situation, plaintiff will not be able to find new counsel to represent him.

Further, counsel represents several hundred other plaintiffs in this MDL. Given their experience acquired throughout the course of this litigation, counsel is or should be knowledgeable regarding the relevant facts, documents, expert testimony, and legal issues in the case. It would take replacement counsel a significant amount of time to become familiar with the case. Other courts have denied motions to withdraw on similar grounds. See Haines, 814 F. Supp.

at 425 (denying motion to withdraw in part because counsel was involved in multiple similar cases against the same defendants, thus counsel was "uniquely aware of the facts, documents, expert testimony, litigation strategy, legal issues and legal authority"); Cuadra v. Univision Communs., Inc., C.A. No. 09-4946 (JLL), 2012 U.S. Dist. LEXIS 48431, at *29 (D.N.J. Apr. 4, 2012) (denying motion to withdraw in part because case had been ongoing for three years and counsel was "uniquely aware of the facts, documents, and legal issues").

Moreover, plaintiff's claim is too complex for him to pursue pro se. "In cases where withdrawal would significantly impair a party's ability to maintain the action, the court has not permitted counsel to withdraw." Rusinow, 920 F. Supp. at 72 (citing Haines, 814 F. Supp. at 425; Kriegsman v. Kriegsman, 150 N.J. Super. 474, 479-80 (App. Div. 1977)). Here, plaintiff would be unable to maintain his claims against defendants because it is unlikely he will be able to find replacement counsel and his claims are too complex to pursue pro se. Both the parties and the Court would face significant delay and burden if plaintiff were forced to proceed pro se. See Cuadra, 2012 U.S. Dist. LEXIS 48431, at *29 (denying motion to withdraw in part because the parties and the court would face "unmanageable delays and burden" if plaintiff were forced to find replacement counsel or proceed pro se). Further, an attorney's withdrawal in the MDL context has particular

6

potential to harm the administration of justice and become burdensome on the Court. See In re FEMA Trailer Formaldehyde Products Liability Litigation, MDL No. 07-1873, 2011 WL 4368719, at *2 (E.D. La. Sept. 16, 2011)(denying motions to withdraw in MDL case because withdrawal would harm the administration of justice and bring administration of the MDL "to a grinding halt" as the court and defense counsel would be forced to take on the burden of locating and communicating with pro se plaintiffs). Accordingly, withdrawal is inappropriate.

**B. Financial Burden on Counsel**

To support their motion, counsel relies on RPC 1.16(b)(6) which states that an attorney may withdraw his representation if "the representation will result in unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client." Counsel argues requiring them "to continue representing [p]laintiff places an undue financial hardship/burden on them." Mot. at 2. Counsel contends requiring them to move forward in their representation would cost them "hundreds of thousands of dollars to get the matter up to and through trial—i.e. expert reports, depositions, travel, hotel rooms and accommodations for a multi-week trial, getting experts to trial, etc." Id. Counsel argues such expenses "will exceed any potential jury verdict in this matter," leaving them with unreimbursed expenses. Id. They aver "this is particularly unreasonable given that [p]laintiff's take

7

home portion from his projected settlement award most likely exceeds any amount he would ultimately walk away with from a jury award at trial." Id.

Counsel's arguments are not persuasive. An attorney does not have the right to withdraw as counsel for his or her client at his or her whim. "A sudden disenchantment with a client or a cause is no basis for withdrawal." Rusinow, 920 F. Supp. at 72. An attorney has certain obligations and duties to a client once representation is undertaken, and the obligations in this respect "do not evaporate because the case becomes more complicated or work more arduous or a retainer not as profitable as first contemplated or imagined." Kriegsman, 150 N.J. Super. at 479-80. The fact that it will be expensive to litigate the case is not a surprise to counsel. They knew this when they undertook to represent plaintiff. If counsel is now "scared off" by the prospect of paying for trial, counsel should not have undertaken the representation of plaintiff in the first instance. The Court will not countenance a situation where a lawyer is permitted to abandon a client who chooses not to settle.

Although counsel predicts the cost of trial will exceed the jury verdict, this is not necessarily the case. Further, even if true, this does not automatically warrant counsel's withdrawal. See Haines, 814 F. Supp. at 419 (denying motion to withdraw even though counsel alleged the costs of litigation would exceed the

amount of recovery); Kriegsman, 150 N.J. Super. at 480 (finding plaintiff's inability to pay all fees counsel demanded was insufficient grounds to grant the motion to withdraw because it would be difficult for plaintiff to find replacement representation and trial was imminent).

An analogous situation was present in Haines, supra. In Haines, a law firm brought eight cases against the cigarette industry on behalf of individuals who developed lung cancer from smoking. 814 F. Supp. at 416. The firm sought to withdraw its representation of one of the plaintiffs because litigation against the cigarette industry had become an "unreasonable financial burden" and the case in which the firm sought withdrawal was likely to be unprofitable. Id. at 418. The court denied the motion to withdraw finding that withdrawal on the grounds that the case may be unprofitable would be inappropriate. Id. at 425. The court further noted that the firm possessed unique knowledge given its representation of several plaintiffs in similar cases. Id. The court determined if withdrawal were permitted, the plaintiff would be disadvantaged because it was unlikely she would be able to find replacement counsel, let alone replacement counsel experienced in the same type of litigation. Id. Accordingly, the court determined there was no way to minimize the harm to plaintiff and the case was unlikely to move forward if withdrawal were permitted. Id. For

the same reasons withdrawal was denied in Haines, counsel's motion is denied.

Further, the parties in Haines entered into a contingency fee agreement. Id. The court noted that just as the plaintiff would be unable to disavow the contract if the case settled quickly and the firm had to do minimal work, the firm could not disavow the contract because the case had become potentially unprofitable. Id. at 426. Ultimately, the court determined it would be inappropriate to allow the firm to withdraw merely because the retainer turned out to be less lucrative than counsel had once hoped. Id.

Just as the firm in Haines undertook the representation of several plaintiffs in similar cases, counsel here undertook the representation of hundreds of plaintiffs in this MDL. Counsel cannot disavow their agreement with one plaintiff because representation of that plaintiff may become unprofitable. Just as in Haines, it is unlikely plaintiff will be able to find replacement counsel, let alone counsel informed about the facts and issues in this MDL. Further, just as in Haines, counsel entered into an agreement to represent plaintiff. Counsel cannot disavow the representation because their agreement may turn out to be less lucrative than counsel originally thought.

In cases "where withdrawal would significantly impair a client's ability to find substitute counsel or to maintain the action, courts have refused to permit withdrawal despite the fact

that representation has become unprofitable for the client's lawyers." Haines, 814 F. Supp. at 425 (citing Kriegsman, 150 N.J. Super. at 479-80). Here, although litigating the case will undoubtedly be expensive, for the reasons already stated, withdrawal would significantly and materially prejudice plaintiff. Thus, withdrawal is inappropriate.

**C. The Retainer Agreement**

Counsel also cites to RPC 1.16(b)(7) which states that an attorney may withdraw if "other good cause for withdrawal exists." Counsel contends that withdrawal is permitted pursuant to their retainer agreement with plaintiff. Mot. at 3. Specifically, the agreement states that counsel "may withdraw from representation of [plaintiff]" if they believe the "claim does not have a chance of success significant enough to proceed." Id. The Court is not persuaded by counsel's argument. The retainer agreement does not supersede counsel's obligations under the Rules of Professional Conduct. Counsel undertook certain obligations and duties to plaintiff when he was retained. These obligations do not disappear because the case becomes more difficult or the outcome less profitable or predictable than originally anticipated. Kriegsman, 150 N.J. Super. at 479-80.

At bottom, counsel seeks to withdraw because the client has chosen to litigate rather than settle. This is not a sufficient reason to withdraw. See RPC 1.2(a)("A lawyer shall abide by a

11

client's decision whether to settle a matter."). It has long been recognized that an attorney owes a duty of zealous representation to his or her client. LoBiondo v. Schwartz, 199 N.J. 62, 100 (2009). When counsel "signed up" hundreds of clients they undertook to represent all of their interests, not just those who elected to settle. Counsel's obligations do not stop when a client rejects a settlement offer. While it will undoubtedly be expensive to litigate the case, this is a risk counsel undertook when they chose to represent plaintiff. Haines, 814 F. Supp. at 427 (stating that when a plaintiff and attorney enter into a contract on a contingency fee basis, the attorney cannot then walk away from the contract simply because "the case may not generate the return it expected at the outset"). Counsel's obligations to their client do not evaporate when counsel's economic interests are at risk. As noted in Haines, "[a]s with all contingency fee arrangements, [the firm] knowingly assumed the risk that its arrangement with [the plaintiff] would not match its initial prediction of costs and returns." 814 F. Supp. at 427. Further, "the needs and obligations of the contingency fee system dictate that [the law firm] not be permitted to close the door to the courts which it has opened. To permit withdrawal would be to permit the nullification of any contingency fee contract which later turns out to be less profitable than originally thought." Id. at 428. The fact that

hundreds of counsel's clients settled is undoubtedly lucrative. Counsel must accept the good with the bad.

**CONCLUSION AND ORDER**

For the foregoing reasons, counsel's motion will be denied. Accordingly,

IT IS HEREBY ORDERED this 15th day of August, 2018 that counsel's Motion to Withdraw [Doc. No. 6] is DENIED; and it is further

ORDERED counsel's Motion to Withdraw a Filed Document [Doc. No. 4] is DENIED as moot.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: August 15, 2018